IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| MICHAEL RAY JONES, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No.: 1:15cv911-WC |
| | ) |
| CAROLYN W. COLVIN, | ) |
| Acting Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

# MEMORANDUM OPINION

## I.      INTRODUCTION

Michael Ray Jones ("Plaintiff") filed an application for a period of disability and disability insurance benefits under Title II of the Social Security Act ("the Act"), 42 U.S.C. § 401, *et seq.*, on September 18, 2012. The application was denied at the initial administrative level. Plaintiff then requested and received a hearing before an Administrative Law Judge ("ALJ"). Following the hearing, the ALJ sent Plaintiff for consultative cardiovascular and psychological examinations and accepted additional evidence into the record. Nevertheless, the ALJ subsequently issued a decision finding that Plaintiff had not been under a disability during the relevant period. Plaintiff appealed that decision to the Appeals Council, which rejected his request for review of the ALJ's decision. The ALJ's decision consequently became the final decision of the Commissioner

of Social Security ("Commissioner").[1]  *See Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).  The case is now before the court for review under 42 U.S.C. § 405(g).  Pursuant to 28 U.S.C. § 636(c), both parties have consented to the conduct of all proceedings and entry of a final judgment by the undersigned United States Magistrate Judge.  Pl.'s Consent to Jurisdiction (Doc. 15); Def.'s Consent to Jurisdiction (Doc. 14).  Based on the court's review of the record and the briefs of the parties, the court AFFIRMS the decision of the Commissioner.

## II.  STANDARD OF REVIEW

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to benefits when the person is unable to

> engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 423(d)(1)(A).[2]

To make this determination, the Commissioner employs a five-step, sequential evaluation process.  *See* 20 C.F.R. §§ 404.1520, 416.920 (2011).

(1) Is the person presently unemployed?
(2) Is the person's impairment severe?
(3) Does the person's impairment meet or equal one of the specific

---

[1]  Pursuant to the Social Security Independence and Program Improvements Act of 1994, Pub. L. No. 103-296, 108 Stat. 1464, the functions of the Secretary of Health and Human Services with respect to Social Security matters were transferred to the Commissioner of Social Security.

[2]  A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities that are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

>impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1 [the Listing of Impairments]?
>(4) Is the person unable to perform his or her former occupation?
>(5) Is the person unable to perform any other work within the economy?
>An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).[3]

The burden of proof rests on a claimant through Step Four. *See Phillips v. Barnhart*, 357 F.3d 1232, 1237-39 (11th Cir. 2004). A claimant establishes a *prima facie* case of qualifying disability once they have carried the burden of proof from Step One through Step Four. At Step Five, the burden shifts to the Commissioner, who must then show there are a significant number of jobs in the national economy the claimant can perform. *Id*.

To perform the fourth and fifth steps, the ALJ must determine the claimant's Residual Functional Capacity ("RFC"). *Id*. at 1238-39. The RFC is what the claimant is still able to do despite the claimant's impairments and is based on all relevant medical and other evidence. *Id*. It may contain both exertional and nonexertional limitations. *Id*. at 1242-43. At the fifth step, the ALJ considers the claimant's RFC, age, education, and work experience to determine if there are jobs available in the national economy the claimant

---

[3] *McDaniel* is a supplemental security income (SSI) case. The same sequence applies to disability insurance benefits. Supplemental security income cases arising under Title XVI of the Social Security Act are appropriately cited as authority in Title II cases, and vice versa. *See, e.g.*, *Ware v. Schweiker*, 651 F.2d 408, 412 (5th Cir. 1981); *Smith v. Comm'r of Soc. Sec.*, 486 F. App'x 874, 876 n.\* (11th Cir. 2012) ("The definition of disability and the test used to determine whether a person has a disability is the same for claims seeking disability insurance benefits or supplemental security income.").

can perform. *Id*. at 1239. To do this, the ALJ can either use the Medical Vocational Guidelines ("grids"), *see* 20 C.F.R. pt. 404 subpt. P, app. 2, or call a vocational expert ("VE"). *Id*. at 1239-40.

The grids allow the ALJ to consider factors such as age, confinement to sedentary or light work, inability to speak English, educational deficiencies, and lack of job experience. Each factor can independently limit the number of jobs realistically available to an individual. *Phillips*, 357 F.3d at 1240. Combinations of these factors yield a statutorily-required finding of "Disabled" or "Not Disabled." *Id*.

The court's review of the Commissioner's decision is a limited one. This court must find the Commissioner's decision conclusive if it is supported by substantial evidence. 42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997). "Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see also Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) ("Even if the evidence preponderates against the Commissioner's findings, [a reviewing court] must affirm if the decision reached is supported by substantial evidence."). A reviewing court may not look only to those parts of the record which support the decision of the ALJ, but instead must view the record in its entirety and take account of evidence which detracts from the evidence relied on by the ALJ. *Hillsman v. Bowen*, 804 F.2d 1179 (11th Cir. 1986).

[The court must] . . . scrutinize the record in its entirety to determine the

> reasonableness of the [Commissioner's] . . . factual findings. . . . No similar presumption of validity attaches to the [Commissioner's] . . . legal conclusions, including determination of the proper standards to be applied in evaluating claims.

*Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

### III.   ADMINISTRATIVE PROCEEDINGS

Plaintiff was forty-five years old on the date of the hearing before the ALJ, and had completed his high school education. Tr. 49. Following the administrative hearing, and employing the five-step process, the ALJ found at Step One that Plaintiff "has not engaged in substantial gainful activity since January 1, 2012, the alleged onset date[.]" Tr. 31. At Step Two, the ALJ found that Plaintiff suffers from the following severe impairments: "hypertension, cardiomegaly, coronary artery disease with stent placement, bundle branch block, obesity, gout, leg pain of unclear etiology, major depressive disorder, and tobacco abuse." Tr. 31. At Step Three, the ALJ found that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments[.]" Tr. 32-33. Next, the ALJ articulated Plaintiff's RFC as follows:

> the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except that the claimant is able to lift and carry ten pounds; the claimant is able to sit six hours and stand and walk two hours; he should be allowed to alternate between sitting and standing at the work station on an occasional basis; he should not be required to use arm, leg, and foot controls; he should not be required to climb, crouch, kneel, or crawl; he should not be required to perform overhead work; he is unable to work around extreme temperatures and humidity; he should avoid all exposure to dangerous machinery, heights, and automotive equipment; he cannot perform production paced work that would require him to meet a hard target or quota, and due to pain, fatigue, malaise and psychological factors, the claimant will be off task five percent of the workday.

5

Tr. 33. Having consulted with a VE at the hearing, the ALJ concluded at Step Four that Plaintiff is "unable to perform any past relevant work[.]" Tr. 38. However, the ALJ next found that, based upon the testimony of the VE, "there are jobs that exist in significant numbers in the national economy that the claimant can perform." Tr. 38. The ALJ noted the following representative occupations: "Bench Assembler,"[4] "Order Clerk," and "Wood Products Inspector." Tr. 39. Accordingly, at Step Five, the ALJ determined that Plaintiff "has not been under a disability . . . from January 1, 2012, through the date of this decision[.]" Tr. 39.

## IV.  PLAINTIFF'S ARGUMENT

Plaintiff presents two issues in his "Statement of the Issues," arguing that the ALJ "committed reversible error in failing to address the opinion of Dr. Adediji[,] whose opinion directly conflicts with the ALJ's RFC finding[,]" and that the ALJ "erred in mischaracterizing the VE's testimony." Pl.'s Br. (Doc. 11) at 4.

## V.  DISCUSSION

### A.  The ALJ's treatment of Dr. Adediji's Opinion.

As mentioned previously, the ALJ referred Plaintiff for a consultative cardiovascular examination after the evidentiary hearing before the ALJ. Dr. Adediji

---

[4] Considering the terms of the hypotheticals posed to the VE and the eventual limitations incorporated into the RFC, the ALJ erred in finding that Plaintiff may perform this occupation because, according to the VE, it would require Plaintiff to meet "production quotas," *see* Tr. 71, and the ALJ specifically found that Plaintiff "cannot perform production paced work that would require him to meet a hard target quota[.]" Tr. 33. However, the ALJ's error in this regard was harmless because the ALJ identified two other jobs existing in significant numbers in the national economy which Plaintiff can perform.

6

performed the examination.  *See* Tr. 413-421.  In pertinent part, while recounting Plaintiff's "History of Present Illness," Dr. Adediji noted Plaintiff's report of "No shortness of breath as such.  Denies wheezing."  Tr. 413.  During his physical examination, Dr. Adediji noted the following with respect to Plaintiff's breathing: "Respirations are regular with no intercostal retractions or use of accessory muscles apparent.  Normal diaphragmatic excursion.  Normal fremitus, no thrills.  Normal to A&P, without wheezing, rales, rhonchi, stridor, or rubs."  Tr. 414.  As part of his consultative report, Dr. Adediji completed a Medical Source Statement of Ability to do Work-Related Activities (Physical).  Tr. 416-421.  In opining on Plaintiff's "Environmental Limitations" on the form statement, Dr. Adediji checked a box indicating his opinion that Plaintiff could "Never" "tolerate exposure to" "dust, odors, fumes and pulmonary irritants."  Tr. 420.  Where Dr. Adediji was asked to explain "the particular medical or clinical findings" supporting this assessment, Dr. Adediji wrote simply "chest pain CAD [coronary artery disease], fatigue, [and] bilateral leg pain."  Tr. 420.

     The ALJ considered Dr. Adediji's opinion in formulating Plaintiff's RFC, expressly giving it "some weight."  Tr. 37.  As an initial matter, the ALJ correctly observed that "claimant's physical examination [by Dr. Adediji] was entirely unremarkable, and specifically, the claimant had no objective cardiovascular symptoms[.]"  Tr. 35.  In relevant part, the ALJ observed that "Dr. Adediji indicated that the claimant had some environmental limitations due to chest pain, coronary artery disease, fatigue, and bilateral leg pain."  Tr. 37.  Ultimately, however, due at least in part to the ALJ's finding that

7

Plaintiff's "subjective complaints are not credible," Tr. 36, the ALJ disregarded those aspects of Dr. Adediji's opinion which were inconsistent with the RFC articulated by the ALJ. *See* Tr. 37 ("The undersigned gave some weight to Dr. Adediji's opinion inasmuch as it is consistent with the determined residual functional capacity.  However, the undersigned notes that Dr. Adediji's assessed limitations appear to be primarily based on the claimant's subjective reports given the essentially normal physical examination.").

Plaintiff argues that the ALJ "never addressed the fact that Dr. Adediji had clearly indicated that Mr. Jones was never to work around dust, odors, fumes and pulmonary irritants.  Under the circumstances, this Court should find that the ALJ erred in failing to address the medical source statement completed by Dr. Adediji post hearing that conflicted with the ALJ's RFC findings." Pl.'s Br. (Doc. 11) at 15-16.

Putting aside potential problems with the reliability of the relevant portion of Dr. Adediji's opinion,[5] and assuming that Dr. Adediji in fact intended to indicate the limitations reflected in the report, Plaintiff's argument is unavailing.  First, as set forth above, it is clear that the ALJ did consider and address the medical source statement provided by Dr. Adediji.  While the ALJ did not recite, verbatim, all of Dr. Adediji's specific findings with

---

[5]  In short, it appears Dr. Adediji's opinion about the specific environmental limitations relied upon by Plaintiff is not supported by his examination of Plaintiff.  As recounted above, Plaintiff did not report, and Dr. Adediji did not observe, any respiratory or pulmonary issues suggesting that Plaintiff may "never" be exposed to "dust, odors, fumes and pulmonary irritants."  Moreover, the only medical bases articulated by Dr. Adediji for his opinion in this regard—chest pain caused by coronary artery disease, fatigue, and bilateral leg pain—seem attenuated at best without a more thorough explanation for how those conditions would preclude any exposure to the subject conditions despite Plaintiff's essentially normal reports and examination.

respect to the environmental limitations about which he opined, the ALJ plainly took note of Dr. Adediji's opinion about environmental limitations and the objective medical basis he articulated for his opinion. *See* Tr. 37. There is no requirement that an ALJ regurgitate every stray or discrete point or observation in a lengthy consultative examination and report in order to reflect a proper consideration of the report. Second, Plaintiff's argument that Dr. Adediji's "opinion directly conflicts with the ALJ's RFC finding" is not supported by the record. "Direct" conflict would entail the ALJ's finding that Plaintiff may continuously be exposed to such environmental conditions. The ALJ plainly made no such finding.

To the extent the ALJ's RFC finding nevertheless can be read as conflicting with the relevant part of Dr. Adediji's opinion, the ALJ did not err in disregarding Dr. Adediji's opinion. In general, the opinion of a one-time examining physician is not entitled to great weight. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1160 (11th Cir. 2004). Such opinion may be disregarded where the record evidence suggests a contrary finding. *See, e.g., Perkins v. Comm'r of Soc. Sec.*, 553 F. App'x 870, 874 (11th Cir. 2014). As set forth above, the ALJ plainly disregarded any aspect of Dr. Adediji's opinion to the extent it was not "consistent with the determined residual functional capacity." Tr. 37. Given the lack of any evidence in the record supporting the relevant portion of Dr. Adediji's opinion—again, Dr. Adediji's own examination offers no objective support for the breadth of the restriction about which he opined, and Plaintiff points to no other evidence in the record, whether objective medical evidence or Plaintiff's own reports or testimony, lending support to Dr. Adediji's opinion—and the ALJ's finding that assessed limitations based

upon Plaintiff's subjective complaints are not entitled to deference due to Plaintiff's lack of credibility, the ALJ's decision to disregard that portion of Dr. Adediji's opinion is supported by substantial evidence.

Finally, as argued by Defendant, *see* Def.'s Br. (Doc. 12) at 6, even if the ALJ erred by failing to incorporate the relevant portion of Dr. Adediji's opinion into the RFC, such error was at most harmless because the ALJ would still have concluded that Plaintiff was not disabled. Plaintiff does not argue that the limitations about which Dr. Adediji opined necessarily would render him disabled. Moreover, the Dictionary of Occupational Titles does not indicate that "atmospheric conditions," *i.e.*, "conditions such as fumes, noxious odors, dusts, mists, gases, and poor ventilation that affect the respiratory system, eyes, or the skin," *see Medical-Vocational Quick Reference Guide*, SSA-POMS: DI 25001.001 § B.5, are present in any of the representative sedentary occupations relied upon by the ALJ in finding that there are significant numbers of jobs in the national economy which Plaintiff may perform. As such, it is apparent that, even if the ALJ had imposed the environmental limitations assessed by Dr. Adediji, the ALJ still would have found that Plaintiff could perform jobs existing in significant numbers in the national economy. Accordingly, any error in failing to incorporate Dr. Adediji's environmental limitations was harmless and does not warrant remand.

Based upon all of the above, the court concludes that Plaintiff's claim is without merit. The ALJ did not err in failing to explicitly address Dr. Adediji's assessment that Plaintiff may not be exposed to dust, odors, fumes and pulmonary irritants because the

ALJ's decision to disregard that portion of Dr. Adediji's opinion was supported by the record. Moreover, as discussed herein, any error which may have occurred was harmless and does not warrant reversal of the ALJ's decision.

### B. The ALJ's Treatment of the VE's Testimony.

Plaintiff's second and final claim is as follows:

> The ALJ posed five hypothetical questions, to which [the VE] responded it "would preclude the ability to sustain any competitive work" and "could not sustain any competitive employment."
>
> Yet, the ALJ did not have this anywhere in her decision. The vocational expert clearly stated the claimant, given all of his limitations, could not sustain any competitive employment, and the ALJ failed to follow that advise [sic], much less address why in her decision, completely mischaracterizing the VE's testimony.

Pl.'s Br. (Doc. 11) at 16.

Plaintiff is correct that the ALJ posed a series of five hypotheticals to the VE. Tr. 69-73. With respect to hypotheticals one through four, the VE affirmed that a hypothetical person with the limitations articulated by the ALJ would be able to perform jobs existing in significant numbers in the national economy. *See* Tr. 70 (hypothetical one); 71 (hypotheticals two and three); and 72 (hypothetical four). The VE's testimony as to hypothetical four was contingent on the ALJ's clarification that the hypothetical person can "stand and walk for two hours total, but . . . for less than one hour at one time." Tr. 72. It was only with respect to hypothetical five—in which the ALJ posited a hypothetical person who, "due to severe pain, fatigue, malaise, et cetera, could be expected to be off

11

task or non-productive more like 25 percent of the workday"—that the VE testified that such a person would not be able to "sustain any competitive work." Tr. 73.

As reflected in the above recitation of the ALJ's RFC finding, the ALJ did not conclude that Plaintiff would be "off task" for up to twenty-five percent of the day, as was contemplated in hypothetical five. Tr. 33. Rather, the ALJ determined that, "due to pain, fatigue, malaise and psychological factors, the claimant will be off task five percent of the workday." Tr. 33. That specific limitation was posited in hypothetical one, which the VE specifically testified would not preclude competitive work. Tr. 70. In essence, the ALJ's RFC was most consistent with the limitations imposed in hypothetical three, which added additional limitations to those articulated in hypotheticals in one and two, *compare* Tr. 69-71 *with* 33, and all of which the VE testified would not preclude competitive work. As such, the ALJ did not "mischaracterize" the VE's testimony. Rather, the ALJ simply did not adopt an RFC which incorporated the non-exertional limitation included in hypothetical five. Plaintiff's claim of error is without merit.

## VI.   CONCLUSION

For all of the reasons given above, the undersigned Magistrate Judge concludes that the decision of the Commissioner is AFFIRMED. A separate judgment will issue.

Done this 3rd day of January, 2017.

/s/ Wallace Capel, Jr.
UNITED STATES MAGISTRATE JUDGE